Case 3:15-cv-00203 Document 52 Filed in TXSD on 03/30/17 Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
March 30, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ASHLEY KRAWIETZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 3:15-CV-203 |
| | § | |
| GALVESTON INDEPENDENT SCHOOL DISTRICT, | § § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

The parties' cross-motions for summary judgment[1] stem from a dispute between student and school district over a Texas Education Agency ("TEA") Due Process Hearing Decision ("The Decision"). Ashley requested the hearing to determine whether GISD failed to provide her with a free, appropriate public education ("FAPE") from 2009 to 2015 as required by the Individuals with Disabilities Education Act ("IDEA").[2] The Decision found that although some of Ashley's claims for relief were barred by a one-year statute of limitations, GISD's continuing failure to evaluate Ashley for special education services entitled her to compensatory services and equitable relief.

---

[1] Defendant Galveston Independent School District's ("GISD") motion for summary judgment (Dkt. 27); Plaintiffs Ashley K. (then a minor student) and Amanda P.'s (her mother and Next Friend) (together, "Ashley") motion for summary judgment (Dkt. 40).

[2] In the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), Congress reauthorized the Individuals with Disabilities Education Act ("IDEA"). *See* Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647 (codified as amended at 20 U.S.C. §§ 1400-1491o (2010). However, the Code retains its short title, and the Court therefore refers to "IDEA" throughout this Opinion. *See* 20 U.S.C. § 1400(a).

Ashley then brought this suit to assert her status as a prevailing party who is entitled to attorneys' fees. The cross-motions for summary judgment require the Court to decide the following issues based on the administrative record: 1) whether the Decision correctly granted Ashley relief; 2) whether Ashley is a prevailing party; and 3) whether the attorneys' fees sought are reasonable.

## I. Statement of the Undisputed Facts

The undisputed facts are as follows.[3] Ashley was born in 1996 and has exhibited troubling behavior since she was in preschool. These behaviors can safely be attributed to a variety of genetic and environmental factors. In 2004, GISD identified Ashley as a student with disabilities who was eligible for special education services. GISD developed an Individualized Educational Plan ("IEP"). Ashley was evaluated annually through 2008. In 2008, Ashley's family withdrew her from GISD after she attempted to burn another student with a hot glue gun. Ashley began homeschooling in 2009, which was to last for the next four years.

In 2013, Ashley returned to GISD, enrolling at AIM College and Career Prep Center ("AIM"). AIM is a GISD charter school. Ashley's AIM application stated that she had received special education services for a disability. Additionally, Ashley's family informed GISD upon her return that she had received special education services in the past. They further informed GISD that these services had never been dismissed.

---

[3] The full—and often tragic—extent of Ashley's disabilities, behavioral issues, and interactions with the school board, hospitals, and other providers are contained in the pleadings and attached exhibits. The Court limits its recitation of these facts to those necessary for this Opinion.

Unable to locate Ashley's records, GISD determined that she had been dismissed from special education status and services.

Ashley started the ninth grade at AIM in August 2013. In September 2013, she was suspended for performing oral sex on two students in a faculty restroom. She was also placed on Disciplinary Alternative Educational Placement for two months. She was also failing three out of her five classes. GISD referred Ashley for Section 504 Plan ("504") services in November 2013.[4] The Section 504 Committee determined that Ashley was eligible for 504 accommodations due to PTSD, ADHS and OCD. The Committee did not address her confirmed diagnoses of Triple-X Disorder and depressive disorders. Accommodations included "additional time to complete assignments, reminders to stay on task, "chunking" material, a quiet place to work, and, small group testing." Dkt. 1-2, ¶ 36. GISD did not design or implement a behavior plan.

Ashley's academic and behavioral performance improved after the fall of 2013, and she was ultimately successful in ninth grade (2013-14) at AIM. She began to struggle once again—both academically and behaviorally—in tenth grade (2014-15). She was hospitalized once again in September 2014. She was twice caught stealing in October 2014. She scored below the 20th percentile on multiple sections of the 2014

---

[4] Section 504 mandates that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance …." 29 U.S.C. § 794(a). This provision was originally found in Section 504 of the public law eventually codified by the Code. A "504 Plan" may include accommodations for a student with disabilities who does not qualify for IDEA protection.

PSAT. She completed less than half of the expected credits for her fall semester (August 2014-December 2014).

In response to Ashley's continuing struggles, GISD scheduled another 504 Conference in February 2015 over protests from Ashley's family. Ashley, now represented by counsel, submitted a Special Education Due Process Hearing Request letter on February 9, 2015. During a Resolution Session held prior to the Hearing, the parties agreed that GISD would conduct a Full Individual Evaluation ("FIE"). The FIE, completed in April 2015, found that Ashley suffered from poor self-esteem, and exhibited learning disabilities in the areas of reading, math, and written expression. The FIE concluded that Ashley was eligible for special education services. The FIE did not assess Ashley's sensory needs. Nor did it assess the need for post-school transition, in-home training, parent training, sexuality education, or speech/pragmatic language.

Special Education Hearing Officer ("SEHO") Ann Vevier Lockwood conducted the Due Process Hearing, which concluded in May 2015. Both Ashley and GISD were represented by counsel. Ashley argued that GISD had denied her the right to a FAPE from 2009 through 2015. Ashley sought the following relief:

> i. That the district be ordered to provide to the student eligibility for special education and related services, an appropriate IEP in the least restrictive environment, which is a residential placement….
>
> ii. If the district cannot or will not provide appropriate services to the student, then the parents seek reimbursement for the placement they assembled for the student. This would include reimbursement for private services, evaluations and mileage, incurred in the absence of a provision of FAPE by the district and whether the family is entitled to have the district fund private placement, evaluations and/or related services going forward for the time determined by the hearing officer to be appropriate.

      iii. Compensatory educational services due to the district's denial of FAPE in the amounts and types determined by the hearing officer to be appropriate to compensate the student for any violations of law the hearing officer finds….

      iv. Any relief that the hearing officer deems appropriate or which is recommended by the student's experts and evaluators.

Dkt. 1-1, p. 18.

The SEHO released the Decision of the Hearing Officer on July 7, 2015. Dkt. 1-2. The Decision made the following conclusions of law and fact, categorized here based on their favorability to Ashley.

### i. Favorable Conclusions

- GISD had a continuing duty to re-evaluate Ashley when she returned to the school district. GISD should have recognized that a re-evaluation was overdue and identified Ashley as a student with a disability upon her enrollment with AIM. GISD's failure to implement an appropriate Individualized Educational Plan ("IEP") harmed Ashley.

- Ashley met the criteria to be identified as the following: 1) a Student with an Emotional Disturbance; 2) a Student with Other Health Impairment; and 3) a Student with Specific Learning Disabilities.

- Ashley is entitled to compensatory and equitable relief for GISD's failure to timely meet its Child Find duty.[5]

### ii. Unfavorable Conclusions

- A one-year statute of limitations applied time-barred all claims that arose prior to February 9, 2014.

- Ashley was not entitled to residential placement because she had not demonstrated that such treatment constituted the least restrictive environment as required by IDEA.

---

[5] The Decision delineated several orders that it deemed necessary for providing such relief.

- GISD was not required to reimburse Ashley for the Independent Educational Evaluation ("IEE") that she had secured in preparation for the Due Process Hearing. Reimbursement is appropriate where the parent disagrees with the school district's recommendation. Here, GISD had not completed its own evaluation, so there was nothing with which to disagree.

- Any non-IDEA claims were dismissed for lack of jurisdiction.

Dkt. 1-1, pp. 31-34.

On July 21, 2015, Ashley counsel wrote to GISD. Her letter declared that Ashley was the prevailing party and thus deserving of attorneys' fees. The letter offered to reduce the attorneys' fees by 15% in consideration for a timely settlement. Dkt. 40-2. On July 31, 2015, GISD's counsel responded, concluding that "the law supports only a minimal award of attorneys' fees, if it supports any at all." Dkt. 27-1. GISD's letter further explained that, "in the interest of collaborating to secure an end to this litigation, I am authorized to negotiate a settlement in which GISD would pay $10,000 in exchange for a full release of all existing claims, including attorney's fees." *Id*.

The parties did not reach a settlement agreement. In August 2015, Ashley instead filed a Complaint with this Court pursuant to 20 U.S.C. § 1415(i)(2)(A). Ashley's Complaint sought to establish that she was a prevailing party in the Due Process Decision pursuant to 20 U.S.C. § 1415(i)(3)(B). GISD disagreed, asserting the following arguments in its motion for summary judgment: 1) GISD did not violate the IDEA; 2) alternatively, all relief granted by the Decision was time-barred; 3) Ashley is not a prevailing party and thus not entitled to recover attorneys' fees; and 4) alternatively, the Court should limit or deny attorneys' fees. Dkt. 27.

Ashley's Complaint included affidavits from her counsel of record, Dorene J. Philpot and Deborah Ann Heaton McElvaney regarding attorneys' fees and costs.[6] A Response (Dkt. 32) and Reply (Dkt. 33) followed. Ashley also filed a motion for summary judgment that argued against all relief sought by GISD. Dkt. 40. A Response (Dkt. 46) and Reply (Dkt. 47) followed. Ashley's Complaint also included causes of action pursuant to the Rehabilitation Act of 1973 ("Section 504") and the Americans with Disabilities Act ("ADA"). *See* 29 U.S.C. § 701; 42 U.S.C. § 12101. GISD filed a supplement to its motion for summary judgment arguing against these additional causes. Dkt. 42. However, per the parties' joint stipulation (Dkt. 44), the Court dismissed with prejudice all claims other than those brought under the IDEA. Dkt. 45. Finally, Ashley filed a supplementary brief with the Court arguing that GISD bears the burden of proof. Dkt. 49. GISD responded. Dkt. 50.

## II. Standard of Review

*i. Motion for Summary Judgment and the IDEA*

Under the IDEA, a party aggrieved by an administrative decision may sue in district court. 20 U.S.C. § 1415(i)(2)(A). The district court shall receive the administrative record, hear additional evidence at any party's request, and decide based on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C). "If no party requests

---

[6] Ms. Philpot updated her initial affidavit (Dkt. 1-4) and ultimately asserted that she was entitled to $18,454.54 in costs and $58,378 (198 hours at an hourly rate of $295 for pretrial work and $315 for trial work) in attorney's fees. Dkt. 40-2. Ms. McElvaney updated her initial affidavit (Dkt. 1-5) and ultimately asserted that she was entitled to $772 in costs and $44,775 (179.1 hours at an hourly rate of $250) in attorney's fees. Dkt. 40-1.

additional evidence to be heard by the district court, a motion for summary judgement is simply a procedural device for asking the Court to decide the case on the basis of the administrative record." *C. G. v. Waller Indep. Sch. Dist.*, No. 4:15-CV-00123, 2016 WL 3144161, at *4 (S.D. Tex. June 6, 2016) (internal quotation marks omitted).

A district court should afford "due weight" to the Hearing Officer's Decision. *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993). However, the Decision is not conclusive. *Id*. The Court's review, therefore, is "virtually *de novo*." *Id*. See also *Rockwall Indep. Sch. Dist. v. M.C.*, 816 F.3d 329, 338 (5th Cir. 2016). Here, the only additional evidence introduced by the parties were affidavits, letters, and receipts concerning attorneys' fees and settlement discussions. Relying on the same evidence available to the SEHO, the Court therefore affords due weight to the Hearing Officer's comprehensive Decision.[7]

### ii. Burden of Proof

The movant generally bears the burden of proof.[8] *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005). However, courts look first to the statute itself when the cause of action is statutory. *Id*. The IDEA's plain text is silent on allocating the burden of proof. *Id*. In *Shaffer*, the Supreme Court held that "[t]he burden of proof in an

---

[7] The Fifth Circuit has suggested that the introduction of additional evidence moves the district court's standard of review even closer to *de novo*. See *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997) ("Indeed, given its adducing of new evidence, even evidence of matters that have occurred since the administrative hearing under review, the district court proceeding under the IDEA is a hybrid, akin to a "trial de novo.").

[8] This Opinion uses the general phrase 'burden of proof' to discuss the relevant burden being argued here—the burden of persuasion— "i.e., which party loses if the evidence is closely balanced." *Schaffer*, 546 U.S. at 56.

administrative hearing challenging an IEP is properly placed upon the party seeking relief." *Id.* at 62. *See also White ex rel. White v. Ascension Parish Sch. Bd.,* 343 F.3d 373, 377 (5th Cir. 2003) ("[T]he IDEA creates a presumption in favor of a school system's educational plan, placing the burden of proof on the party challenging it."); *Cypress-Fairbanks Indep. Sch. Dist. V. Michael F*., 931 F. Supp. 474, 477 (S.D. Tex. 1995) ("The Fifth Circuit has held that there is a presumption in favor of the educational placement established by a student's IEP, and the party attacking its terms should bear the burden of showing why the educational setting established by the IEP is not appropriate."), *aff'd as modified,* 118 F.3d 245 (5th Cir. 1997).

Here, the parties do not dispute GISD's IEP. Instead, the parties dispute whether GISD's failure to create an IEP led to the denial of Ashley's right to a FAPE. In the absence of an IEP, the Court thus concludes that GISD bears the burden to show by the preponderance of the evidence that the Decision was improper.

### *iii. The IDEA*

Congress enacted the IDEA to ensure that disabled children are provided with a free appropriate public education in the least restrictive environment possible. *See Daniel R.R. v. State Bd. of Educ.,* 874 F.2d 1036, 1043-44 (5th Cir. 1989). Under the IDEA, states must first "identify, locate, and evaluate all children with disabilities … to ensure that they receive needed special-education services." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009). This duty is known as "Child Find." *Id*. The state's Child Find duty is only raised if the state had reason to suspect that: 1) a student was disabled and 2)

the student may currently require special education services.  *See Alvin Indep. Sch. Dist. v. A.D. ex rel. Patricia F.,* 503 F.3d 378, 382 (5th Cir. 2007).

After identifying a disabled child, states must next evaluate the child to ensure that she receives a FAPE.  *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005).  Conducting an annual IEP is the prescribed method of tailoring a FAPE to the needs of the individual student.  *See Board of Educ. v. Rowley,* 458 U.S. 176, 181 (1982).  An IEP is an individualized, written statement that includes, *inter alia*, the child's present educational and functional level, a set of measurable annual goals, and a method of measuring whether these goals have been met.  20 U.S.C § 1414(d)(1)(A).

Parties may present a complaint under the IDEA "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child …."  20 U.S.C. § 1415(b)(6).  Either party presenting a complaint under 20 U.S.C. § 1415(b)(6) may request an impartial due process hearing.  20 U.S.C. § 1415(f)(1)(A).[9]  An aggrieved party may generally bring a civil action.  20 U.S.C. § 1415(i)(2)(A).

After receiving the records of the administrative proceedings and hearing additional evidence at the request of any party, the court shall grant such relief as it

---

[9] The IDEA imposes a two-year statute of limitations on complaints filed under this provision. The statute of limitations begins to run on "the date the parent or public agency knew or should have known about the alleged action …." 20 U.S.C. § 14151(f)(3)(C). However, a state statute that has an explicit time limitation for such actions controls.  *Id*.  Texas has such a one-year statute of limitations, which therefore controls. TEX. ADMIN. CODE § 89.1151(c) ("A parent or public education agency must request a hearing within one year of the date the parent or public education agency knew or should have known about the alleged action that serves as the basis for the request.").

determines is appropriate, basing its decision on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C). Also within the court's discretion is award of reasonable attorneys' fees to a prevailing party. 20 U.S.C. § 1415(i)(3)(B)(i)(I). Attorneys' fees are based on prevailing community rates "for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). However, attorneys' fees may not be awarded for services performed after the state makes a settlement offer if "the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins." 20 U.S.C. § 1415(i)(3)(D)(i)(I).

### III. Discussion

*i. The Hearing Officer's Decision*

GISD argues that Ashley's academic success precluded the need for an evaluation. GISD further argues that it promptly evaluated Ashley once it suspected a need for special education services. Therefore, according to GISD, it did not violate the IDEA's mandate. Alternatively, GISD argues that any failure to evaluate Ashley occurred prior to February 9, 2014—one year before Ashley requested a Due Process Hearing. Therefore, according to GISD, the one-year statute of limitations bars any relief for IDEA violations.

GISD does not dispute that Ashley was disabled.[10] GISD instead argues that it had no duty to develop an IEP because she was succeeding academically. GISD had a

---

[10] Had GISD not lost her records, it is hard to conceive of a situation in which it did not realize that Ashley's disabilities and current academic struggles entitled her to special education

duty to evaluate Ashley only if 1) it suspected that she was disabled; and 2) she demonstrated a need for special education services due to her disability. *See Alvin Indep. Sch. Dist. v. A.D. ex rel. Patricia F.,* 503 F.3d 378, 382 (5th Cir. 2007).

The Court finds that the Decision correctly determined that all claims for violations that began in 2009 and continued through Ashley's return to GISD in 2013 are time-barred. A one-year statute of limitations bars any claim for relief from IDEA violations about which either party knew or should have known. *See* TEX. ADMIN. CODE § 89.1151(c). The Decision correctly noted that Ashley was time-barred from relief for violations occurring before February 9, 2014.

The Decision further found that GISD had a continuing Child Find duty that it failed to fulfil during the period that Ashley's claims remained timely—from February 9, 2014 to February 9, 2015. According to the Decision, "the failure in maintaining accurate educational records was a continuing violation and the school district had a continuing Child Find Duty into the Spring semester of 2014—at least beginning on or after February 9, 2014." Dkt. 1-2, p. 23. The Court agrees with the Decision's ultimate conclusion without finding that a continuing Child Find duty equitably tolled the one-year statute of limitations. This is because GISD's Child Find duty arose anew in the fall of 2014.

Ashley's academic decline, hospitalization, and incidents of theft during the semester—taken together—were sufficient to cause GISD to suspect that her several

---

services. Such realization would have alerted GISD to the fact that she was severely overdue for another IEP since returning to the school district after several years of homeschooling.

disabilities created a need for special educational services. The Court finds that, conservatively, GISD should have suspected the need for an IEP by October 2014. GISD did not attempt to conduct an evaluation until April 2015. The evaluation occurred at least six months after GISD should have suspected that one was required, and three months after Ashley requested a Due Process Hearing. The Court further finds that this six-month delay was unreasonable. *See Dallas Indep. Sch. Dist. v. Woody*, 178 F. Supp. 3d 443, 468 (N.D. Tex. 2016) (collecting cases). This is especially true given the extensive notice given to GISD and the dire circumstances involved.

The Court therefore finds that GISD was derelict in its duty to timely develop an IEP. This failure resulted in Ashley being denied a FAPE starting in the 2014 fall semester and continuing until the issuance of the Decision. The Court therefore upholds all relief granted in the SEHO's Decision.

*ii. Prevailing Party*

GISD disputes Ashley's assertion that she is a prevailing party. "[A] prevailing party is one that attains a remedy that both (1) alters the legal relationship between the school district and the handicapped child and (2) fosters the purposes of the IDEA." *Jason D.W., v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998). S*ee also Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) ("[P]laintiffs may be considered 'prevailing parties' ... if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."); *El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 423 (5th Cir. 2009) ("[A] litigant must attain some judicial

imprimatur on a material alteration of the legal relationship in order to be a prevailing party.").

Here, the SEHO's Decision offers a sufficient judicial imprimatur. It altered the legal relationship between GISD and Ashley because GISD was now obligated to provide equitable and compensatory relief to Ashley. *See Meiner v. Missouri*, 800 F.2d 749, 753 (8th Cir. 1986). This relief—which included training and counseling for both Ashley and her family and transition services to prepare Ashley for adulthood—is meaningful. That is, it fulfills the IDEA's purpose of providing disabled students with a free appropriate public education.[11] Ashley sought relief from GISD's failure to provide a FAPE. Qualitatively, Ashley received relief for much—though not all—of the relief sought. However, this does not mean—as GISD contends—that the relief granted to Ashley was *de minimis*.[12] While relevant to the determination of reasonable attorneys' fees, the fact that Ashley was not wholly successful does not preclude her status as a prevailing party. The Court finds that Ashley is a prevailing party.

---

[11] Congress explicitly found that, "Disability is a natural part of the human experience and in no way diminishes the right of individuals to participate in or contribute to society. Improving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." 20 U.S.C. § 1400(c)(1).

[12] GISD also contends that Ashley is not the prevailing party because the relief granted was not the relief sought. See *Dawn G. v. Mabank Indep. Sch. Dist.*, Cause No. 3:13-CV-135-L, 2014 U.S. Dist. LEXIS 47824, at #18, *23-24 (N. D. Tex. Apr. 7, 2014). Ashley sought—*inter alia*—that she be identified as a student with a disability who is eligible for special education services; that GISD comply with all procedural and substantive requirements of the IDEA; and "any other relief the hearing officer deems appropriate." Dkt. 1-2, pp. 2-3. The Court finds that the SEHO's Decision granted these requests for relief.

### *iii. Reasonable Attorneys' Fees and Costs*

The Court, "in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(h)(3)(B)(i)(I). The calculation of reasonable attorneys' fees involves an initial calculation of a lodestar fee.[13] This calculation is accomplished by multiplying the number of hours expended on the case by counsels' reasonable hourly rates.

> The Court then considers these twelve factors:
>
> (1) the time and labor required for the litigation;
> (2) the novelty and difficulty of the questions presented;
> (3) the skill required to perform the legal services properly;
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved and the result obtained;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989), *superseded in bankruptcy context by statute in In re Meronk*, 249 B.R. 208 (9th Cir. BAP 2000). The Supreme Court has held that the degree of success obtained is "the most critical factor." *Farrar v. Hobby,* 506 U.S. 103, 114 (1992). Courts have determined that this factor is

---

[13] This involves multiplying the number of reasonable number of hours expended on the case by the reasonable hourly rate for such representation. *See La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324. (5th Cir. 1995).

especially important when, as here, the plaintiff succeeded on some but not all claims. *See, e.g., Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 208–09 (5th Cir. 1998).

As an initial matter, the Court is required here to calculate two lodestar figures—one for Dorene J. Philpot and another for Deborah Ann Heaton McElvaney. Both counsel provided affidavits containing their hourly rates and total hours worked. Dkt. 1-4; 1-5. Both counsel submitted updated affidavits with Ashley's motion for summary judgment. Dkt. 40-1; 40-2. Ashley's counsel also provided an expert's affidavit attesting to the reasonableness both of counsel's hourly rates and total hours worked. Dkt. 40-4. GISD does not dispute these lodestar figures. The Court therefore finds the following lodestar figures:

- **Ms. Philpot**

    - Hourly rate: $295 for pre-trial work and $315 for trial work;
    - Total hours: 198 hours;
    - Total fee: $58,378;
    - Total expenses: $954.54;
    - Total fees and expenses: $59,332.54.

- **Ms. McElvaney**

    - Hourly rate: $250;
    - Total hours: 179.1 hours;
    - Total fee: $44,775;
    - Total expenses: $772;
    - Total fees and expenses: $45,547.

The Court finds that Ashley is entitled to attorneys' fees as a prevailing party.[14] Taking into account the *Johnson* factors mentioned above—and, most importantly, the degree of success achieved—the Court finds the following: 1) this litigation presented difficult questions of law and thus required significant time and labor; 2) Ashley's counsel possessed the requisite skill and experience to zealously advocate for their client; the hourly rates they cite were not unreasonable in light of similar cases within the community; 3) it is not apparent that either counsel had to forego other, more lucrative work to take this case; 4) the type of case itself is undesirable due its complexity and the possibility of not recovering attorneys' fees; 5) even though many of Ashley's claims were time-barred, she still received meaningful relief.  The Court therefore adjusts the attorneys' fees due downward to 67% of the lodestar figures for both counsel, resulting in the following awards:

---

[14] GISD contends that attorneys' fees incurred after July 31, 2015—the date of GISD's offer of $10,000 in consideration for a complete settlement (including attorneys' fees)—is without merit. The IDEA prohibits attorneys' fees incurred "at any time more than 10 days before the proceeding begins." 20 U.S.C. § 1415(i)(3)(D)(i).  GISD's settlement offer was made *after* the Due Process Hearing was concluded.  GISD cannot now make itself liability-proof *vis a vis* attorneys' fees simply by issuing a settlement offer after the proceedings have concluded.  In any case, the IDEA also contains an exception to the § 1415(i)(3)(D)(i) prohibition where the prevailing parent is "substantially justified in rejecting the settlement offer." 20 U.S.C. § 1415(i)(3)(E).  The Court finds that Ashley was substantially justified in so finding here.

- **Ms. Philpot**

    - Total fee: $39,113.26;
    - Total expenses: $954.54;[15]
    - Total fees and expenses: $40,067.80.

- **Ms. McElvaney**

    - Total fee: $29,999,25;
    - Total expenses: $772;
    - Total fees and expenses: $30,771.25.

## IV.  Conclusion

The Court therefore **GRANTS in part and DENIES in part** the parties' cross-motions for summary judgment.  The Court upholds all relief granted in the SEHO's Decision.  The Court finds that the Plaintiff is a prevailing party and is entitled to reasonable attorneys' fees and costs as described above.  This case, having been completely determined based on the parties' cross-motions for summary judgment, is hereby **DISMISSED**.  An order of final judgment will be entered separately.

SIGNED at Galveston, Texas, this 30th day of March, 2017.

_____
George C. Hanks Jr.
United States District Judge

---

[15] Ms. Philpot's claims for costs include, *inter alia*, reimbursement for $15,000 that she already paid to Ms. McElvaney and $2,500 for an expert report prepared in preparation for the ADA and Rehabilitation Act claims that were eventually dismissed by stipulation.  As to the $2,500, the IDEA has no provision for the recoupment of experts' fees.  20 U.S.C. § 1415(i)(3)(B); *see Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297-98 (2006) ("This list of otherwise recoverable costs is obviously the list set out in 28 U.S.C. § 1920, the general statute governing the taxation of costs in federal court, and the recovery of witness fees under § 1920 is strictly limited by § 1821, which authorizes travel and a $40 per diem.").  As to the $15,000, Ms. McElvaney's affidavits did not account for receiving this amount.  To avoid duplicative awards, the Court finds that this amount is properly construed as an advance tendered by Ms. Philpot to Ms. McElvaney for her eventual fee than as costs for Ms. Philpot.